30 C.C.P.A. (Patents)

## In re LINDEMANN et al.

### Patent Appeal No. 4717.

Court of Customs and Patent Appeals.

April 5, 1943.

Steven J. Cox, of New York City, for appellant.

W. W. Cochran, of Washington, D. C. (E. L. Reynolds, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

LENROOT, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming the action of the Primary Examiner in finally rejecting claims 6, 14, 16, 17 and 21 to 24 inclusive of appellants' application for a patent.

No claims have been allowed. The ground of rejection is that the claims are unpatentable over the cited prior art.

Claims 6 and 24 are illustrative of the subject matter involved and read as follows:

"6. In a device of the character described, the combination with an oven compartment of a horizontal partition removably mounted therein, means for supporting the said partition at upper, lower and intermediate positions in said compartment, said partition substantially closing said compartment from side to side and from proximity to front and back thereof, said partition being spaced from the walls of the compartment to leave air passages on two sides thereof between it and the inner walls of the compartment, said compartment having an air inlet at its bottom and an outlet at its top, a burner located adjacent each said opening, a horizontal plate extending over said inlet and between the burden adjacent thereto and said partition, said plate being spaced above and separated from the bottom of the compartment on three sides, said plate extending beyond said last-named burner and closing direct communication between the latter and the compartment to deflect heated gas rising from and passing around said burner against the walls of the compartment and causing them to pass upwardly along said walls, said burners comprising tubular members horizontally disposed and enclosing a space and said space

being closed by a horizontal diaphragm or web partly closing said top outlet."

"24. In an oven, a burner device at the bottom thereof in communication with and adapted to supply heat for the oven, a horizontal deflecting plate between said device and the bottom of the cooking space of the oven there being passages between it and the walls of the oven to permit the passage of heated gases, a horizontally arranged partition in said oven above the said plate substantially closing the space between vertical walls of the oven and dividing the oven into upper and lower communicating cooking compartments above said plate there being passages around said partition having a substantially smaller area than those of said plate permitting passage of heated air and combustion gases from the burner through said lower compartment past said partition to the upper compartment and maintaining a lower range of effective cooking temperatures in said upper compartment than in said lower compartment for the cooking of different kinds of food simultaneously."

The references cited are:

| Moon | 823,288 | Jun. 12, 1906 |
| Glover | 993,241 | May 23, 1911 |
| Meacham | 1,495,862 | May 27, 1924 |

Appellants' application relates to an oven having upper and lower burners, which, however, are not operable at the same time. A horizontal partition is provided which fits snugly against the side walls of the oven. The partition is so placed with respect to the front and rear of the oven as to leave passages permitting heated gas to flow from the lower into the upper part of the oven. A thermostat is provided, placed in the lower part of the oven adjacent to a wall thereof. The lower part of the oven is provided with a baffle over the burner in order to distribute the heated gases from the burner to the sides and front of the oven. The spaces between the partition and the vertical walls of the oven have a substantially smaller area than the spaces permitting the flow of gas from the burner into the lower part of the oven.

It is appellants' contention that by their structure "two distinct temperatures are maintained by a single burner in two separate compartments simultaneously so that cooking operations of different types can be carried on therein at one and the same time."

The patent to Glover discloses an oven divided into two parts by a tray, the tray being so dimensioned as to leave spaces at the four sides to enable the heated gases to enter the upper part of the oven. In the lower part of the oven a cone is provided over the burner. Above this cone a plate or false bottom is provided of such dimensions as to leave spaces between its four sides and the four walls of the oven to enable the heated gases to rise. According to the drawings these spaces are at least as large as the spaces between the partition tray and the walls of the oven.

The specification of Glover states: "The Invention is of advantage in that the articles being cooked or heated are subjected to the direct radiating heat from four surrounding walls of uprising heated gases, and the heat being reflected at the upper part of the oven the temperature is practically even at all parts thereof."

The patent to Meacham discloses an oven divided into two separate parts by a partition and heated by separate burners. This partition is so dimensioned as to prevent any appreciable amount of gases to flow from one part of the oven to the other. A thermostat is provided near the upper part of the lower compartment of the oven.

The patent to Moon discloses an oven divided into upper and lower compartments by a partition, the only direct communication between them being at the front. Two burners are provided, one for supplying heat to the upper compartment, and the other for the lower.

There is found in the record an affidavit of an expert in household economics, setting forth the great advantages of appellants' device.

Claims 6, 14, 16 and 17 were rejected by the Primary Examiner as lacking patentability over the patent to Glover in view of Meacham and Moon. Claims 21, 22 and 23 were rejected upon Glover in view of Meacham. Claim 24 was rejected upon Glover alone.

The Board of Appeals in its decision stated: "We have carefully considered the citations and application of the same to the terms of the claims as made by the examiner without finding error in his conclusions as to invention. While an extended discussion of theory is presented by applicants' case as to why there are differences between the action of his oven and that of the citations, we are unable to dis-

tinguish any definite certain features. The matters appear to be mostly those of indefinite degree. While it is apparent that Glover allows gases to ascend around each of the four sides of his partition instead of only two, we are not convinced that any such unobvious or outstanding results are accomplished in applicants' oven as to constitute invention in this relation. It seems that Meacham's partition 6 would permit gas flow only at the front and rear and not at the sides and Meacham discloses a thermostat 26 in the lower compartment of the oven."

We are unable to agree with the board's statement that Meacham's partition would permit gas flow from the front and rear. On the contrary the Meacham patent specifically states with respect to the partition disclosed by him, termed "division wall," as follows:

"Attention is directed to the fact that the inner walls of the doors 7 and 8 are so constructed that they will make a tight fit against the adjustable division-wall 6, as it may be moved up for enlarging the baking oven, and may be moved down for enlarging the broiling oven. By reason of this construction therefore, a tight joint will be made between the doors for the adjustment of the division wall 6."

However, it appears that Meacham is relevant with respect to the use of a thermostat.

We will first consider claims 6, 14, 16, 17 and 21 to 23. We would observe that none of these claims makes any reference to the size of the air passages permitting the flow of hot gases either into the lower or upper part of the oven. It is true that many of the claims recite that "restricted" passages are provided to permit heated gases to flow past the partition from the lower into the upper part of the oven. However, both Glover and Moon disclose such restricted passages.

In so far as the claims above stated are concerned, we see no material difference in structure from the structure disclosed by Glover and by Moon, except in those which recite the thermostatic element.

The dimensions of the air passages disclosed by appellant on two sides of the oven might be such, so far as the claims are concerned, as would permit the same amount of heated gas to flow into the upper part of the oven, as would the air passages on four sides of the oven as disclosed by Glover, or on the front as disclosed by Moon. It would seem that if appellant secures the novel result claimed for his structure recited in the said claims the structures disclosed by Glover and Moon could be operated to secure the same result.

With regard to the thermostatic element recited in all of the claims except 6 and 24, as already noted, Meacham shows a thermostat in connection with his oven. His specification states:

"By means of the thermostat, any desired degree of heat may be maintained in the baking oven. That is to say, the heat is retained in the baking oven at the desired degree for cooking a whole meal when it is desired. Such cooking is usually done in ranges of this type, used in modern kitchens of apartments and small houses."

In addition, as stated by the Primary Examiner, "The use of the thermostatic control of the heat producing elements in ovens is, of course, extremely common." This statement is not challenged in the record.

We hold that the element of the thermostat, recited in the claims, is immaterial upon the question of their patentability.

Many of the claims contain functional statements such as that a lower temperature is maintained in the upper part of the oven than in the lower. Such a functional statement cannot of itself lend patentability to a claim. In re John Hays Hammond, Jr., 37 F.2d 760, 17 C.C.P.A., Patents, 803.

Appellants' counsel emphasizes the fact that neither Glover nor Moon had any conception of appellants' alleged invention, but that their concept was that the two parts of the oven would be equally heated, which is contrary to the conception of appellants.

The answer to this contention is that it is *structure* that is here involved, and if there be no material difference between the structures of Glover and Moon and that of appellants as recited in said claims, it is immaterial that Glover or Moon had no conception of the functions that might be performed by the use of their structures.

It is well established that a patentee is entitled to make every use of which his device is susceptible whether he had conceived the idea of the use or not. In re Herault A. Trester, 36 F.2d 133, 17 C.C. P.A., Patents, 642.

To repeat, if the structure set out in said claims would operate as appellants claim, then the said structures of the references could be operated in the same way.

For the reasons stated we find no error in the decision of the board respecting claims 6, 14, 16, 17, 21, 22 and 23.

Coming now to claim 24, we are not in agreement with the Patent Office tribunals that it is readable upon Glover. In this claim a different structure is claimed than is disclosed in the Glover patent; the element in the claim reading "passages around said partition having a substantially smaller area than those of said plate" is nowhere shown in Glover. In Figure 1 of his drawings the passages around his tray appear to be about the same size as the passages leading into the lower part of the oven, while in Figure 2 the passages around the tray appear to be substantially larger than the lower air passages.

The Primary Examiner seemed to recognize this difference in structure, for in his "Statement" we find the following, referring to claim 24: "This claim, introduced for the purpose of appeal, contains the limitation that the passages around the partition 27 are of a substantially smaller area than those around the plate 24. This limitation cannot be found in the specification or original claims and is not obviously disclosed by the drawings. However, the function sought to be established is that a lower range of effective cooking temperature is maintained in the upper compartment than in the lower compartment. It is the Examiner's position that a temperature differential between the upper and lower compartments of the Glover oven is inherent, for the same reasons as in applicant's device."

While the examiner does not expressly hold that the element under consideration constituted new matter, such is the implication. As for his Statement that this limitation does not appear in the specification he is in error, for it does appear *as amended*. An amendment embodying, in substance, this limitation was proposed on November 29, 1940, and appears to have been allowed, for there is no record of its rejection.

Furthermore, we cannot agree with the examiner that this limitation is not obviously disclosed in appellants' drawings, for their Figure 2 clearly shows passageways around the partition of substantially smaller area than those around their plate in the bottom of the oven.

Neither can we agree with the examiner that the temperature differential resulting through the operation of a structure containing this limitation is inherent in the structure disclosed by Glover. Indeed, it seems to us that if appellants' oven has marked advantages over the structure disclosed by Glover, as claimed in the affidavit in the record, it must be due to the element here under consideration. It is our opinion that this element in the claim renders it patentable.

For the reasons stated we are of the opinion that claim 24 should be allowed.

The decision appealed from is affirmed with respect to claims 6, 14, 16, 17, 21, 22 and 23, and as to claim 24 the decision is reversed.